Argued and submitted April 1, affirmed as modified June 24, 1986

SMITH,
*Respondent on review,*

*v.*

EMPLOYMENT DIVISION,
Department of Human Resources,
*Petitioner on review,*

and ADAPT,
*Respondent (below).*

(EAB 84-AB-1217; CA A33421; SC S32481)

721 P2d 445

James E. Mountain, Jr., Solicitor General, Salem, argued the cause for petitioner on review. With him on the petition for review were Dave Frohnmayer, Attorney General, and Michael D. Reynolds and Jeff Bennett, Assistant Attorneys General, Salem.

David Morrison, of Heiling & Morrison, P.C., Roseburg, argued the cause for respondent on review.

David M. Gordon, of Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield, filed a brief *amicus curiae* on behalf of American Civil Liberties Union.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

The issue in this case is whether the state Employment Division may deny unemployment benefits to claimant, Alfred L. Smith. Smith's employer, Douglas County Council on Alcohol and Drug Abuse Prevention and Treatment (ADAPT), discharged Smith because he ingested peyote while off duty during a ceremony of the Native American Church. The Employment Appeals Board concluded that Smith should not receive benefits because he had been discharged for misconduct connected with his employment. The Court of Appeals reversed, citing its decision in *Black v. Employment Division,* 75 Or App 735, 707 P2d 1274 (1986), and remanded to the Board for determination "whether this claimant's ingestion of peyote was a religious act." *Id.* at 743. We agree with the Court of Appeals, but we hold that remand to the Board for determination of the nature of claimant's ingestion of peyote is unnecessary.

Smith is a 66-year-old Klamath Indian and a member of the Native American Church. He had a drinking problem as a young man but has not used alcohol since 1957. Smith has counseled alcoholics since 1971, and worked for ADAPT from August 25, 1982, until his discharge March 5, 1984.

ADAPT views its counselors as role models for the persons they treat and therefore enforces a policy of abstinence from alcohol and mind-altering drugs. ADAPT's written personnel policy, in effect when Smith was hired, provides that "[m]isuse of alcohol and/or other mind-altering substances by a staff member" is grounds for termination. On September 19, 1983, ADAPT's executive director, John Gardin, warned Smith that he could be discharged for using peyote, even if the use was part of a religious ceremony. On October 3, 1983, ADAPT discharged Galen A. Black, another counselor and Native American Church member, because Black used peyote during a church ceremony. On December 5, 1983, ADAPT issued a memorandum concerning employe use of alcohol and other drugs, stating:

"In keeping with our drug-free philosophy of treatment, and our belief in the disease concept of alcoholism, and the associated complex issues involved in both alcoholism and drug addiction, we require the following of our employees:

1. Use of an illegal drug or use of prescription drugs in a

non-prescribed manner is grounds for immediate termination from employment. * * *"

On Friday, March 2, 1984, Gardin talked to Smith about Smith's planned attendance at a Native American Church service the upcoming weekend. Smith said that he intended to ingest peyote during the ceremony. Gardin replied that although he did not object to attendance, consumption of peyote would cause Smith's dismissal. Smith insisted that he would ingest peyote.

On Saturday, Smith participated in the ceremony and ingested a small quantity of peyote. On Monday, March 5, 1984, Smith told Gardin that he had indeed ingested peyote, and Gardin discharged Smith that day. Smith refused Gardin's offer to enter ADAPT's employe assistance program, saying that there was nothing wrong with him.

On March 22, the Employment Division denied unemployment benefits to Smith because he had been discharged for misconduct.[1] At Smith's requested hearing, the referee found that although Smith had committed misconduct, he was not disqualified from receiving benefits. The referee concluded that because "there is no evidence in the hearing record to indicate that granting benefits to claimants whose unemployment is caused by adherence to religious beliefs would have any significant impact on the trust fund, it cannot be held that the alleged State interest warrants interference with the claimant's freedom of religion." The Employment Appeals Board (Board) reversed. The Board stated that "[t]he compelling state interest is in the proscription of illegal drugs, not merely in the burden upon the Unemployment Compensation Trust Fund."

## I.  OREGON CONSTITUTIONAL ANALYSIS

In this case, claimant contends that the denial of unemployment benefits placed a burden on his freedom to worship according to the dictates of his conscience under the Oregon Constitution, Article I, sections 2 and 3. Those sections provide:

"Section 2.  Freedom of worship. All men shall be secure

---

[1] *See* ORS 657.176(2)(a) and OAR 471-30-038(3), quoted *post* at 215.

in the Natural right, to worship Almighty God according to the dictates of their own consciences.

"Section 3. Freedom of religious opinion. No law shall in any case whatever control the free exercise, and enjoyment of religeous (sic) opinions, or interfere with the rights of conscience."

Claimant also relies upon the First Amendment to the federal constitution, but we address the Oregon constitutional issues first. In a recent decision concerning a religious school's right to be exempt from paying unemployment taxes, we stated that "the judicial responsibility [is] to determine the state's own law before deciding whether the state falls short of federal constitutional standards." *Salem College & Academy, Inc. v. Emp. Div.,* 298 Or 471, 484, 695 P2d 25 (1985). We follow this practice consistently. *See, e.g., State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984); *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). We now examine the Oregon constitutional issues.

The states were the original guarantors of religious freedom for their citizens. In *Permoli v. First Municipality of New Orleans,* 44 US (3 How) 589, 610, 11 L Ed 739 (1845), the United States Supreme Court held that the federal constitution did not protect the religious liberties of state citizens from encroachment by state legislatures. *See* Cooley, Constitutional Limitations 587 (4th ed 1878). Not until 1940 did the Court apply the free exercise clause of the First Amendment to the states through the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 US 296, 60 S Ct 900, 84 L Ed 1213 (1940) (statute regulating religious solicitation that allowed officials discretion to determine whether solicitation was religious held invalid).

In a line of decisions starting with *City of Portland v. Thornton,* 174 Or 508, 512-13, 149 P2d 972 (1944), *cert den* 323 US 770 (1945), this court interpreted the Oregon guarantees of religious freedom as "identical in meaning" to the federal constitution. *See Baer v. City of Bend,* 206 Or 221, 223, 292 P2d 134 (1956); *Jehovah's Witnesses v. Mullen,* 214 Or 281, 291, 330 P2d 5 (1958), *appeal dismissed* 359 US 436 (1959). However, in *Salem College & Academy,* which also arose under the unemployment compensation law, we interpreted the

Oregon Constitution, Article I, sections 2 and 3, independently of the federal constitution. That analysis is relevant to our disposition of this case.

In *Salem College & Academy,* a religious school contended that the state could not compel it to pay unemployment taxes because to do so would infringe upon the school's free exercise rights under the Oregon Constitution. We rejected that contention, holding that the state had not infringed upon the school's right to religious freedom when all similarly situated employers in the state were subject to the same tax. We stated:

> "The exaction [of unemployment tax] here is in no way based on activities or resources that are more characteristic of schools than of other kinds of employers or institutions, let alone on a school's religious character or the content of its programs. The obligation to provide unemployment coverage focuses solely on the economic and social aspect of the employment relation and the cost that unemployment imposes on the discharged employee and on society. * * * These payments are financial burdens only in the same sense that the costs of employing paid workers at all are financial burdens; a religious association engaged in the free exercise of worship or other religious activity without employing paid personnel pays no unemployment tax.

> "As to the alleged administrative and clerical burdens, such as posting notices, filing reports and keeping payroll records subject to inspection by the Employment Division, these requirements, too, are tailored to the economic aspect of the employment relation and not to any activities peculiarly characteristic either of schools or of religious programs. They are not different in principle from a host of other secular regulatory requirements such as health inspections of cafeteria workers or kitchens, safety inspection of school busses, and licensing of drivers." 298 Or at 486-87.

The unemployment compensation law disqualifies claimants who have been discharged for what an employer validly considers misconduct connected with the employment. ORS 657.176(2)(a). Just as employers may be required to pay unemployment taxes regardless of their religious affiliations, employes discharged for misconduct may be denied unemployment benefits regardless of their motivation for committing the misconduct. All discharged employes in this state are

subject to the same standards, and the definition of misconduct does not speak at all to religious motivations for the misconduct. In this case, the claimant wilfully violated his employer's orders, which ORS 657.176(2)(a) and OAR 471-30-038(3) define as misconduct. ORS 657.176(2)(a) provides:

> "An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter, or for an employing unit in this or any other state or Canada or as an employe of the Federal Government, for which remuneration is received which equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the assistant director finds that the individual:

> "(a)   Has been discharged for misconduct connected with work * * *."

OAR 471-30-038(3) provides:

> "Under the provisions of ORS 657.176(2)(a) and (b), misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for purposes of denying benefits under ORS 657.176."

The statute and the rule are completely neutral toward religious motivations for misconduct. If the statute or the rule did discriminate for or against claimants who were discharged for worshipping as they chose, we would be faced with an entirely different issue.

■      The referee and the Board agreed that the employe was discharged for misconduct, although they disagreed on the consequences of the misconduct. Claimant does not argue here that ADAPT had no right to fire him; this is not a wrongful discharge claim. Claimant states in his brief that "[t]his proceeding does not challenge the employer's decision to fire Al Smith, only the state's denial of unemployment benefits." Instead, claimant argues, denial of unemployment benefits burdens, albeit indirectly, his right to worship as he sees fit.

An employer may impose conditions on employment that conflict with the employe's particular religious practices or beliefs. If the employe violates the conditions imposed, the employe is not eligible for benefits when the violation is "a wilful violation of the standards of behavior which an employer has the right to expect of an employe." OAR 471-30-038(3). Claimant was denied benefits through the operation of a statute that is neutral both on its face and as applied. The law and the rule defining misconduct in no way discriminate against claimant's religious practices or beliefs. If claimant's freedom to worship has been interfered with, that interference was committed by his employer, not by the unemployment statutes.

Under the Oregon Constitution's freedom of religion provisions, claimant has not shown that his right to worship according to the dictates of his conscience has been infringed upon by the denial of unemployment benefits. We do not imply that a governmental rule or policy disqualifying a person from employment or from public services or benefits by reason of conduct that rests on a religious belief or a religious practice could not impinge on the religious freedoms guaranteed by Article I, sections 2 and 3. Nor do we revive a distinction between constitutional "rights" and "privileges." But here it was not the government that disqualified claimant from his job for ingesting peyote. And the rule denying unemployment benefits to one who loses his job for what an employer permissibly considers misconduct, conduct incompatible with doing the job, is itself a neutral rule, as we have said. As long as disqualification by reason of the religiously based conduct is peculiar to the particular employment and most other jobs remain open to the worker, we do not believe that the state is denying the worker a vital necessity in applying the "misconduct" exception of the unemployment compensation law. However, our inquiry must not end here. We now consider whether claimant should receive unemployment benefits under the free exercise clause of the federal First Amendment.

## II. FEDERAL CONSTITUTIONAL ANALYSIS

Although we conclude that the state constitution has not been violated by the denial of benefits to claimant, we find

that he is entitled to prevail under the federal First Amendment. The First Amendment provides in relevant part that "Congress shall make no law respecting an establishment of religion or prohibit the free exercise thereof * * *." In applying the free exercise clause of the First Amendment, the United States Supreme Court employs a balancing test that protects religiously motivated actions as well as religious beliefs. The Court's balancing test first requires that the person claiming the free exercise right show that the application of the law in question significantly burdens the free exercise of his religion. If the person shows this burden, the state then must demonstrate that the constraint on the religious activity is the least restrictive means of achieving a "compelling" state interest. *Sherbert v. Verner,* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963); *see* Nowak, Rotunda, & Young, Constitutional Law 1053-54 (2d ed 1983).

In *Sherbert,* the Court applied this balancing test in concluding that South Carolina could not withhold unemployment benefits from a woman whose religion forbade working on Saturday. The claimant, a Seventh-Day Adventist, was discharged because she would not work on Saturdays, and she then could not find another job because of her refusal to work Saturdays. The state denied unemployment benefits because the claimant did not have a legitimate cause for failing to find work.

The Court held that the denial of unemployment benefits forced the claimant

> "to choose between following the precepts of her religion and forfeiting her benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [her] for her Saturday worship." 374 US at 404.

South Carolina in effect penalized the claimant for refusing to violate her religious beliefs. After concluding that the claimant suffered a substantial, though indirect, burden on her free exercise rights, the Court found that the state had not shown a compelling secular interest that justified the burden. The Court held that South Carolina must exempt workers such as

the claimant from its requirement that they be available for work on Saturdays.

The Court reaffirmed *Sherbert* in *Thomas v. Review Bd.*, 450 US 707, 101 S Ct 1425, 67 L Ed 2d 624 (1981). The Court held that a Jehovah's Witness who quit his job when he was transferred to a department that manufactured munitions was entitled to unemployment benefits, even though his religion, the Jehovah's Witnesses, did not absolutely forbid him to work in munitions manufacturing. As in *Sherbert*, the Court held that the state had not demonstrated a compelling interest that justified denying the claimant benefits.

We hold that under these decisions, the referee correctly concluded that Smith should receive unemployment benefits.

The denial of unemployment benefits significantly burdened Smith's free exercise rights. The employer does not question the sincerity of Smith's religious beliefs. The Board's findings demonstrate that peyote is the sacrament of the Native American Church.

The fact that some Church members may not ingest peyote is irrelevant to our inquiry. In *Thomas*, the Court held "the guarantee of free exercise is not limited to beliefs which are shared by all the members of a religious sect." 450 US at 715-16. We are not to examine the tenets of a religion once the sincerity of the claimant's belief has been demonstrated, because to do so would improperly involve the courts in theological disputes. *See id.* at 716 ("Courts are not arbiters of scriptural interpretation").

The next step in the analysis is determining whether the state action burdens the claimant's religious expression significantly or only minimally. Under *Sherbert* and *Thomas*, we are constrained to hold that the denial of unemployment benefits is a significant burden on Smith's religious freedom. "While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Thomas*, 450 US at 718.

Nor is the state's interest in this case a more "overriding" or "compelling" interest than in *Sherbert* and *Thomas*. The Board found that the state's interest in proscribing the use of dangerous drugs was the compelling interest that

justified denying the claimant unemployment benefits. How-
ever, the legality of ingesting peyote does not affect our
analysis of the state's interest. The state's interest in denying
unemployment benefits to a claimant discharged for
religiously motivated misconduct must be found in the unem-
ployment compensation statutes, not in the criminal statutes
proscribing the use of peyote.[2] The Employment Division
concedes that "the commission of an illegal act is not, in and
of itself, grounds for disqualification from unemployment
benefits. ORS 657.176(3) permits disqualification only if a
claimant commits a felony in connection with work * * *.
[T]he legality of [claimant's] ingestion of peyote has little
direct bearing on this case."[3]

The state's interest is simply the financial interest in
the payment of benefits from the unemployment insurance
fund to this claimant and other claimants similarly situated.
*Sherbert* and *Thomas* did not find this financial interest
"compelling" when weighed against the free exercise rights of

---

[2] Under ORS 475.992(4) and OAR 855-80-020, the possession of peyote is a crime.
Peyote (Lophophora williamsii) is a cactus that "contains a number of active alkaloids
with varying properties; the chief hallucinogen among these alkaloids is mescaline."
Note, *Hallucinogens,* 68 Colum L Rev 521, 525 (1968). The Oregon Court of Appeals,
construing a previous statute, has held that religious users of peyote are not exempt
from criminal sanctions. *State v. Soto,* 21 Or App 794, 537 P2d 142 (1975), *cert den*
424 US 955 (1976). The federal government and several states exempt the religious use
of peyote through caselaw, statute or regulation. *See State v. Whittingham,* 19 Ariz
App 27, 504 P2d 950 (1973), *cert den* 417 US 946 (1974); *People v. Woody,* 61 Cal 2d
716, 40 Cal Rptr 69, 394 P2d 813 (1964); *Whitehorn v. State,* 561 P2d 539 (Okla Crim
App 1977); 21 CFR § 1307.31 (1985); Iowa Code Ann § 204.204(8) (1986); NM Stat
Ann § 30-31-6(D) (1980); SD Comp Laws Ann § 34-20B-14(17) (1977); Tex Stat Ann
4476-15 § 4.11 (1976).

[3] ORS 657.176(3) provides:

"If the authorized representative designated by the assistant director finds an
individual was discharged for misconduct because of the individual's commission
of a felony or theft in connection with the individual's work, all benefit rights
based on wages earned prior to the date of the discharge shall be canceled if the
individual's employer notifies the assistant director of the discharge * * * and:

"(a) The *individual has admitted commission of the felony* or theft to an
authorized representative of the assistant director, or

"(b) The *individual has signed a written admission of such act* and such
written admission has been presented to an authorized representative of the
assistant director, or

"(c) Such act has resulted in a *conviction by a court of competent jurisdic-
tion.*" (Emphasis added.)

This statute does not apply to claimant herein.

the claimant. The state has not shown that the financial stability of the fund will be imperiled by claimants applying for religious exemptions if this claimant receives benefits. The Division also argues that granting Smith unemployment benefits will violate the establishment clause of the First Amendment. In light of the holdings of *Thomas* and *Sherbert,* which are directly in point, we reject the Division's argument.

Therefore, under the federal test, Smith is entitled to receive unemployment benefits. Although the Court of Appeals remanded this case and *Black v. Employment Division, supra,* to the Board for determination of the claimants' religious interest, we see no reason to remand for a determination of claimant's religious interest in ingesting peyote. The Court of Appeals is affirmed as modified and the case is remanded to the Board for entry of an order not inconsistent with this opinion.