Argued and submitted April 1, affirmed as modified and remanded June 24, 1986

BLACK,
*Respondent on review,*

*v.*

EMPLOYMENT DIVISION,
Department of Human Resources,
*Petitioner on review,*
and ADAPT,
*Respondent (below).*

(EAB 84-AB-161; CA A31186; SC S32482)

721 P2d 451

James E. Mountain, Jr., Solicitor General, Salem, argued the cause for petitioner on review. With him on the petition for review were Dave Frohnmayer, Attorney General, and Michael D. Reynolds and Jeff Bennett, Assistant Attorneys General, Salem.

David Morrison, of Heiling & Morrison, P.C., Roseburg, argued the cause for respondent on review.

David M. Gordon, of Thorp, Dennett, Purdy, Golden &

Jewett, P.C., Springfield, filed a brief *amicus curiae* on behalf of American Civil Liberties Union.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

This is a companion case to *Smith v. Employment Division*, 301 Or 209, 721 P2d 445 (1986). Claimant appealed an Employment Appeals Board (EAB) order denying unemployment compensation benefits. Claimant's employer discharged him for ingesting peyote during a Native American Church ceremony.

The employer, Douglas County Council on Alcohol and Drug Abuse Prevention and Treatment (ADAPT), hired claimant as a resident assistant September 12, 1982. ADAPT's policy is to suspend or discharge employes who abuse alcohol or other drugs because it considers its employes role models for persons they treat. Claimant had a history of substance abuse but had not used drugs since early 1982. After two promotions, claimant became a drug rehabilitation counselor in June 1983.

Claimant, like Smith in the companion case, belongs to the Native American Church and attends services weekly. During a Church ceremony on September 10, 1983, claimant ingested a small amount of peyote "for spiritual reasons, as a communion." When claimant's supervisor discovered that claimant had ingested peyote, he told claimant to choose between resignation, discharge or entry into an inpatient treatment program. Contending that his ingestion of peyote was not a relapse into drug abuse, claimant rejected the treatment offer, and on October 3, 1983, ADAPT discharged him. John Gardin, ADAPT's executive director, stated that "we would have taken the same action had the claimant consumed wine at a Catholic ceremony or any drug anywhere. It would be the same result."

When the Employment Division denied benefits, claimant requested a hearing. At the hearing, claimant argued that he had a right to practice his religion any way he chose, including the ingestion of peyote, and further asserted that the only reason he took the drug was as part of the spiritual ceremony at the Native American Church. After the hearing, the referee concluded that claimant's ingestion of peyote was "an isolated instance of poor judgment," and therefore not misconduct justifying denial of benefits. OAR 471-30-038(3).

After the referee's decision for claimant, the

employer requested review by EAB, which denied benefits. The EAB order referred to claimant's religious use of peyote as follows:

"(7)    On approximately September 10, 1983 the *claimant attended a native American religious ceremony and ingested peyote as part of the ceremony.* (8) Peyote is an illegal substance and the claimant was aware of its status. (9) *The use of this drug during the ceremony was not required and was optional among the participants.* (10) Prior to ingesting the drug the claimant spoke to others about the advisability of partaking in this portion of the ceremony. (11) After consulting with others, the claimant decided to ingest the drug." (Emphasis added.)

and concluded:

"We disagree with the referee and find that the claimant was discharged for misconduct in connection with his work. The Administrative Rule [OAR 471-30-038] cited by the referee, sets out that misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employee and is an act that amounts to a wilful disregard of the employer's interests.

"We find in the instant case that the claimant's actions constitute misconduct as defined above. He knew the employer's rules prohibited use of drugs and alcohol and also recognized that he could be terminated if he violated those policies. Although the use of an illegal drug was optional during the religious ceremony, the claimant wilfully made the choice to ingest those drugs.[1] He did so even after he was advised by others that such a choice would perhaps be incorrect or improper. Considering the seriousness of the claimant's conduct in violating the employer's rules we find the exculpatory provisions of the Rule cannot come into play."

The question in this case, as in *Smith v. Employment Division, supra,* is whether the denial of unemployment compensation benefits because claimant used peyote in a Native American Church ceremony unconstitutionally infringes

---

[1]As we noted in *Smith v. Employment Division,* 301 Or 209, 721 P2d 445 (1986), whether a particular religious practice or belief is optional or universally accepted by members of a particular religion is irrelevant to the federal analysis. *See Thomas v. Review Bd.,* 450 US 707, 715-16, 101 S Ct 1425, 67 L Ed 2d 624 (1981) ("the guarantee of free exercise is not limited to beliefs which are shared by all the member of a religious sect").

upon his right to the free exercise of his religion. As in *Smith,* we hold that denial of unemployment compensation benefits did not violate Article I, sections 2 and 3, of the Oregon Constitution, but did violate the free exercise clause of the First Amendment to the United States Constitution.[2]

Although the referee failed to make precise factual findings, we infer from the EAB's somewhat anemic conclusions that the Native American Church is a recognized religion, that peyote is the sacrament of the Church, and that claimant was a member of the Church and an active participant in the religious ceremonies of the Church.

Other courts have noted the role of peyote in the ceremonies and practices of the Native American Church. For instance, in *People v. Woody,* 61 Cal 2d 716, 720-21, 40 Cal Rptr 69, 394 P2d 813 (1964), the California Supreme Court wrote:

"Peyote, as we shall see, plays a central role in the ceremony and practice of the Native American Church, a religious organization of Indians. Although the church claims no official prerequisites to membership, no written membership rolls and no recorded theology, estimates of its membership range from 30,000 to 250,000, the wide variance deriving from differing definitions of a 'member.' As the anthropologists have ascertained through conversations with members, the theology of the church combines certain Christian teachings with the belief that peyote embodies the Holy Spirit and that those who partake of peyote enter into direct contact with God.

"Peyotism discloses a long history. A reference to the religious use of peyote in Mexico appears in Spanish historical sources as early as 1560. Peyotism spread from Mexico to the United States and Canada; American anthropologists

---

[2] Article I, sections 2 and 3, of the Oregon Constitution provide:

"Section 2. Freedom of worship. All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences.

"Section 3. Freedom of religious opinion. No law shall in any case whatever control the free exercise, and enjoyment of religeous (sic) opinions, or interfere with the rights of conscience."

The federal First Amendment provides in relevant part:

"Congress shall make no law respecting an establishment of religion or prohibit the free exercise thereof * * *."

describe it as well established in this country during the latter part of the nineteenth century. Today, Indians of many tribes practice Peyotism. Despite the absence of recorded dogma, the several tribes follow surprisingly similar ritual and theology; the practices of Navajo members in Arizona practically parallel those of adherents in California, Montana, Oklahoma, Wisconsin, and Saskatchewan.

"The 'meeting,' a ceremony marked by the sacramental use of peyote, composes the cornerstone of the peyote religion. The meeting convenes in an enclosure and continues from sundown Saturday to sunrise Sunday. To give thanks for the past good fortune or find guidance for future conduct, a member will 'sponsor' a meeting and supply to those who attend both the peyote and the next morning's breakfast. The 'sponsor,' usually but not always the 'leader,' takes charge of the meeting; he decides the order of events and the amount of peyote to be consumed. Although the individual leader exercises an absolute control of the meeting, anthropologists report a striking uniformity of its ritual.

"A meeting connotes a solemn and special occasion. Whole families attend together, although children and young women participate only by their presence. Adherents don their finest clothing, usually suits for men and fancy dresses for the women, but sometimes ceremonial Indian costumes. At the meeting the members pray, sing, and make ritual use of drum, fan, eagle bone, whistle, rattle and prayer cigarette, the symbolic emblems of their faith. The central event, of course, consists of the use of peyote in quantities sufficient to produce an hallucinatory state.

"At an early but fixed stage in the ritual the members pass around a ceremonial bag of peyote buttons. Each adult may take four, the customary number, or take none. The participants chew the buttons, usually with some difficulty because of extreme bitterness; later, at a set time in the ceremony any member may ask for more peyote; occasionally a member may take as many as four more buttons. At sunrise on Sunday the ritual ends; after a brief outdoor prayer, the host and his family serve breakfast. Then the members depart. By morning the effects of the peyote disappear; the users suffer no aftereffects.

"Although peyote serves as a sacramental symbol similar to bread and wine in certain Christian churches, it is more than a sacrament. Peyote constitutes in itself an object of worship; prayers are directed to it much as prayers are devoted to the Holy Ghost. On the other hand, to use peyote for

nonreligious purposes is sacrilegious. Members of the church regard peyote also as a 'teacher' because it induces a feeling of brotherhood with other members; indeed, it enables the participant to experience the Deity. Finally, devotees treat peyote as a 'protector.' Much as a Catholic carries his medallion, an Indian G.I. often wears around his neck a beautifully beaded pouch containing one large peyote button." (Footnote omitted.)

Of course, we quote *Woody* for illustration only and not as a substitute for administrative findings and conclusions.

The Court of Appeals, apparently troubled by the lack of administrative findings, remanded this case to EAB for findings of fact concerning the following questions:

"(1) Is the ingestion of peyote a sacrament of the Native American Church?

"(2) Is this claimant a member of that church?

"(3) Concerning his use of peyote, were claimant's religious beliefs sincerely held?" *Black v. Employment Division,* 75 Or App 735, 743, 707 P2d 1274 (1985) (footnotes omitted).

We agree that the agency findings are meager, but we see no reason to remand because there is no genuine dispute that the ingestion of peyote is a sacrament of the Native American Church, that the claimant was a member of that Church and that his religious beliefs were sincerely held.

The Court of Appeals is affirmed as modified; the case is remanded to the Board for issuance of an order not inconsistent with this opinion.