Submitted on record and briefs March 6, reversed and remanded for reconsideration
August 20, 1986

# DUPONT,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

## (85-AB 1384; CA A37443)

723 P2d 1073

Phyllis Burke, Salem, filed the brief for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for Employment Division.

No appearance for Rawlinson's Laundry.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue is whether the Employment Division may deny claimant unemployment benefits. She missed two days work after she was given written notice by her employer to work on those days or "she would be considered to have terminated."[1] The referee concluded that she had voluntarily left work without good cause and was subject to disqualification. ORS 657.176(2)(c). The Employment Appeals Board (EAB) adopted the referee's findings of fact and conclusions and affirmed his decision. Claimant seeks judicial review. ORS 657.282; ORS 183.482(8)(c).

The referee found:

"(1) Claimant worked for above employer from February 1984 through June 26, 1985, doing various laundry work for which she was paid $5.33 per hour. (2) She was scheduled to work Monday through Friday, 7:30 a.m. to 4:15 p.m. (3) Claimant is a member of the Jehovah's Witnesses Church. (4) There was an international convention for members in Tacoma, Washington, from June 27 through June 30, 1985. (5) On June 7, 1985, claimant told her supervisor she wanted to be absent from work June 27-28, 1985, to attend the convention. (6) On June 10, 1985 claimant gave her supervisor a note as he requested, to be used by him as a reminder of when she wanted to be absent from work. (7) The supervisor told claimant he saw no reason why she could not have the time off and would work on arranging it. (8) There is no tenet of the church that requires or makes mandatory the member's attendance at the convention. (9) Claimant considered it an obligation and part of her commitment to her Creator to attend the convention. (10) It is a time for study and fellowship to advance and make more firm one's belief in God and the teachings of her church. (11) She attended the convention the two years she has been a member of the church. (12) There are members who do not attend for various reasons and no censure results from the non-attendance, but all members are encouraged to attend if at all possible. (13) The employer notified claimant during the workday, June 25, 1985, that her request to be absent June 27-28, 1985, could not be approved. (14) Claimant thought she had permission from what her supervisor had stated earlier and had made arrangements to travel with a friend to the convention, share the cost

---

[1] This proceeding does not challenge employer's decision, only the state's denial of unemployment benefits.

of gas for the trip and to stay with friends while attending the convention. (15) She notified the employer June 25, 1985, she would be going regardless of whether she had approval to be absent from work or not. (16) The employer explained the disapproval was caused by other employees being off work due to vacations, illness, and one other employee who had an appointment for Friday to get a complete checkup for cancer. (17) Claimant persisted with her announced intentions to attend the convention. (18) The employer gave claimant written notice on June 26, 1985, she should be at work as scheduled or she would be considered to have terminated. (19) Claimant did not report for work Thursday or Friday, June 27-28, 1985, as scheduled. (20) Claimant attended the convention in Tacoma during her absence from work. (21) When claimant reported for work Monday, July 1, 1985, she was notified there was no job for her; that when she did not report for work as scheduled, she was replaced."

The referee concluded:

"Claimant left her work voluntarily without good cause and was properly held subject to disqualification under ORS 657.176.

Since the employer and claimant disagree as to whether the separation was a discharge * * *.

[The test] is: (a) If the employee could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work. (b) If the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge.

"Continued employment was available to claimant for June 27 and June 28, 1985. She did not report for work on either day, because she had decided to go to the convention, notwithstanding the employer's disapproval of her request to be absent from work. Applying the above rule to these facts compels a conclusion that the separation was a voluntary leaving of work. ORS 657.176 provides for a disqualification if an individual leaves work unless 'good cause' to leave the work is established.

"OAR 471-30-038(4) states that 'good cause' for voluntarily leaving work is 'such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work.'

"Claimant had cause to believe the employer was going to permit her to be absent from work the requested two days and made plans accordingly. However, the evidence does not show the employer had actually approved her request. The employer (supervisor) indicated he saw no reason why she could not have the time off and would try to make the arrangements necessary for her to have the time off. Circumstances apparently beyond the employer's ability to control—other employee absences due to vacation or illness—presented a serious problem of being unable to get the work done if more employees were permitted to be absent from work. The employer gave claimant notice as early as possible of the disapproval for her time off from work. This was not a situation where the claimant had major plans with substantial financial commitments which would be forfeited if she did not go to the convention. It was a situation where certain people could be inconvenienced in not having her to share the car expenses, or the people at Tacoma not having her as a guest as expected. However, none of these conditions present sufficient cause to avoid the disqualification of ORS 656.176 for leaving the work.

"The other reason advanced by claimant as justification for her absence and the separation from work, is her religious commitment. The importance of the convention for her own personal well-being is acknowledged, but there is no showing that her absence or failure to attend the convention was a violation of a tenet of her religious beliefs, or the teachings of the church. The church regularly encouraged and expected all members to attend, but it is admitted that some are unable to attend for various reasons and do not suffer any censure of the church for failing to do so. The deprivation of an individual's attendance at the convention cannot be likened to the conflict presented by requiring an individual to work during part of their sabbath. The referee is here considering something that was of personal importance to the claimant, as opposed to a violation of a covenant of her religion. When she was made aware of the forfeiture of her job if she did not show up for work as scheduled, reason would dictate that she alter her plans and report for the scheduled work. The requirements for 'good cause' do not exist in the circumstance which caused claimant to leave her work. The decision properly held her subject to the provisions of ORS 657.176."

Claimant contends that EAB erred in denying her benefits, because the denial impermissibly burdens her free exercise of religion. She relies primarily on *Thomas v. Review*

*Bd., Ind. Empl. Sec. Div.,* 450 US 707, 101 S Ct 1425, 67 L Ed 2d 624 (1981), and *Sherbert v. Verner,* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963), and, by analogy, on this court's decision in *Black v. Employment Division,* 75 Or App 735, 707 P2d 1274 (1985), which has been affirmed, as modified, since the briefs in this case were filed. *Black v. Employment Div.,* 301 Or 221, 721 P2d 421 (1986). We first examine the issue under the Oregon Constitution. *See Smith v. Employment Div.,* 301 Or 209, 213, 721 P2d 445 (1986).

In *Smith* the Supreme Court held that the denial of unemployment benefits to a claimant who was fired for ingesting peyote during a religious ceremony, in violation of his employer's specific rule against the use of any drugs, did not violate the Oregon Constitution,[2] because the unemployment compensation laws do not discriminate against religiously motivated claimants. The Supreme Court explained:

> "Claimant was denied benefits through the operation of a statute that is neutral both on its face and as applied. * * * If claimant's freedom to worship has been interfered with, that interference was committed by his employer, not by the unemployment statutes.
>
> "* * * * *
>
> "But here it was not the government that disqualified claimant from his job for ingesting peyote. And the rule denying unemployment benefits to one who loses his job for what an employer permissibly considers misconduct, conduct incompatible with doing the job, is itself a neutral rule, as we have said. As long as disqualification by reason of the religiously based conduct is peculiar to the particular employment and most other jobs remain open to the worker, we do not believe that the state is denying the worker a vital necessity in applying the 'misconduct' exception of the unemployment compensation law.".

We recognize that *Smith* and *Black* are distinguishable from this case in that they involve discharges for misconduct. ORS

---

[2] Article I of the Oregon Constitution provides, in part:

"Section 2. All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences.

"Section 3. No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience."

657.176(2)(a). This case involves quitting work without good cause.[3] ORS 657.176(2)(c). Nevertheless, we conclude that the *Smith-Black* rationale is controlling here and that claimant's state constitutional claim lacks merit. Therefore, we proceed to examine her federal constitutional claim.

■        Claimant is entitled to prevail under the federal First Amendment,[4] because she voluntarily left her employment for a sincere, religiously motivated action. *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra; Sherbert v. Verner, supra; see Black v. Employment Division , supra; Smith v. Employment Div., supra.* The First Amendment gives special protection to the exercise of religion. *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 713. The denial of unemployment benefits for engaging in *bona fide* religious conduct constitutes a substantial burden on the free exercise of religion. *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 719; *Sherbert v. Verner, supra,* 374 US at 403-06.

■        Claimant's employer has never questioned the sincerity of her religious beliefs. The referee found that she considered attendance at the convention a religious obligation and part of her commitment to her Creator and that she believed that the convention was a time to advance and make more firm her belief in God and the teachings of her church. Thus, she was put to a choice between fidelity to her religious belief or cessation of work. The coercive impact on her exercise of religion is indistinguishable from that found impermissible under the First Amendment in *Smith* and *Black.*

> "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless

---

[3] On appeal, claimant does not contest EAB's finding that she voluntarily left work rather than being discharged.

[4] The First Amendment to the United States Constitution provides, in relevant part:

"Congress shall make no law * * * prohibit[ing] the free exercise [of religion] * * *."

substantial." *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 717-18.

*See also Sherbert v. Verner, supra,* 374 US at 404. The fact that attending the convention was not required by her church or that other church members did not attend is irrelevant to the federal analysis. *See Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 715-716; *Black v. Employment Div., supra,* 301 Or at 224 n 1.

The state has not demonstrated a compelling interest justifying burdening claimant's religious practice.

"The mere fact that the petitioner's religious practice is burdened by a governmental program does not mean that an exemption accommodating his practice must be granted. The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest. However, it is still true that '[t]he essence of all that has been said and written on the subject is that only those interests of the highest order * * * can over-balance legitimate claims to the free exercise of religion.' *Wisconsin v. Yoder,* [406 US 205,] 215." *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 718.

The record is silent as to any state interest not previously advanced by the state and not rejected in the federal analysis in *Smith* and *Black. See Sherbert v. Verner, supra.*

Reversed and remanded for reconsideration.