Argued and submitted June 15, affirmed August 5, 1987

## GLIDE LUMBER PRODUCTS CO.,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

(86-AB-1309; CA A41932)

741 P2d 907

Galen L. Bland, Portland, argued the cause and filed the brief for petitioner.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Dwayne Murray, Eugene, argued the cause for respondent Gregory L. Smith. On the brief were Roger Ousey, and Bischoff & Strooband, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Employer seeks review of EAB's award of unemployment benefits to claimant, whom employer discharged after he tested positive for marijuana in a random drug test required by employer. The issue is whether an employe's off-duty use of a controlled substance, in violation of his employer's written rules, is "misconduct connected with work," ORS 657.176(2)(a), when there is no evidence of on-the-job intoxication or impairment resulting from the drug use. EAB adopted the referee's opinion, which held that the answer is no. We agree and affirm.

In late 1985, employer adopted an employe handbook provision and a written "alcohol and drug policy" relating to drug use and testing. The handbook provision states:

"The Company may require employees to take a medical examination, including a blood and urine test, to detect drug usage. Any employee who refuses to cooperate with any such examination is subject to immediate discharge. Detection of the presence of controlled substances as defined by law (excluding any substance lawfully prescribed for the employee's use) is grounds for discharge."

The alcohol and drug policy repeats the handbook provision and also prohibits the use of intoxicants or controlled substances "while on Company property or during work hours * * * or reporting for work under the influence of alcohol or reporting to work after having ingested any controlled substance." Employer's principal motivation for promulgating the rules was safety in the workplace, and the alcohol and drug policy was included in its safety rules.

Claimant failed a urine test on March 31, 1986. Employer fired him shortly thereafter. The evidence shows that the test which claimant underwent detects marijuana traces in a person's system for approximately 30 days after its use. However, the test cannot provide more refined information, such as whether the person is under the influence of marijuana or when the person used marijuana during the 30-day period. The parties agree that marijuana can impair motor function for up to 12 hours after its ingestion. There was no evidence that claimant was ever intoxicated or impaired while he was at work due to marijuana use. He testified that he had used marijuana two to three weeks before the test. He was

aware of, and had agreed to abide by, employer's handbook rule and drug policy and, although both his testimony and the rules themselves are somewhat ambiguous on the point, he apparently understood, and employer meant, the policy to impose an absolute ban on any marijuana use, on *and* off the job, rather than prohibiting only drug use which could affect an employe's performance or plant safety during working hours.

ORS 657.176(2)(a) authorizes the disqualification of a person for unemployment benefits to which he would otherwise be entitled if he is "discharged for misconduct connected with work." OAR 471-30-038(3) provides, as relevant:

> "Under the provisions of ORS 657.176(2)(a) and (b), misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest * * * is misconduct."

The referee concluded that claimant's discharge was not for misconduct connected with his work, because:

> "The urine sample was taken as part of employer's random sampling program. There was no allegation or evidence of actual impairment that would cause claimant to be inefficient or unsafe while at the workplace.

> "Employer's testimony and evidence regarding lingering impairment was not sufficient to establish any ongoing impairment which would affect claimant's ability to safely perform his job.

> "* * * * *

> "Employer has not established * * * that claimant was in any way impaired, or that drug use, if any, was a disregard of employer's interests. Disqualifying work connected misconduct has not been established."

The essence of the referee's reasoning is that, for claimant's off-the-job drug use to constitute disqualifying misconduct under ORS 657.176(2)(a) and OAR 471-30-038(3), there had to be work deficiencies or drug effects while claimant was at work.

In its first assignment, employer challenges that reasoning and the "finding" that claimant "had not engaged in misconduct when he used marijuana in violation" of

employer's rules. Employer does not appear to argue that, in the absence of its own rules, claimant's marijuana use would be disqualifying misconduct under the statute and the administrative rule. Employer focuses instead on claimant's deliberate violation of its rules prohibiting off the job illicit drug use. Those rules, according to employer, have a "reasonable relation to the conduct of the employer's business." *Giese v. Employment Div.,* 27 Or App 929, 935, 557 P2d 1354 (1976), *rev den* 277 Or 491 (1977). Employer explains that the rules are reasonably calculated to promote work safety and that claimant's intentional violation of the rules was therefore disqualifying misconduct.

Employer relies on our decision in *Giese,* where we held that the claimant's termination after he was convicted of conspiring to damage certain buildings, which were not owned by the employer or connected with its business, was not for work-connected misconduct, "even though the employer [was] amply justified in dismissing" him. 27 Or App at 933. We explained:

"[T]he misconduct was sufficiently serious. It was not, however, shown to be connected with claimant's work; rather it was conduct off the working premises and outside the course and scope of claimant's employment. We conclude that the phrase 'connected with his work' was added to our statute by the legislature to draw a distinction between misconduct while off-duty and misconduct in the course and scope of employment." 27 Or App at 934.

We went on to say:

"We believe that where the conduct or activities for which the claimant is discharged occurred off the working premises and outside the course and scope of employment, the employer must, in order to show that the conduct is work-connected, point to some breach of a rule or regulation [of the employer] that has a reasonable relation to the conduct of the employer's business." 27 Or App at 935.

■ Employer understands the last of the quoted statements to mean that the test which comes into operation if an employer's rule is violated is wholly separate from the statutory test of whether off-duty misconduct is connected with work. Although our language in *Giese* is susceptible to that understanding, among others, that understanding cannot be

correct. An employer cannot reduce its statutory unemployment insurance responsibilities simply by promulgating an in-house rule. A rule may be relevant to the proof of facts bearing on whether off-duty misconduct is connected with work, but it cannot give rise to different substantive tests of work-connectedness than the ones expressed in the statute, the administrative rule and the cases construing them. ORS 657.176(2)(a) says nothing about the reasonable relation of a rule to an employer's business, much less suggest that such a relationship can serve as an alternative to the "misconduct connected with work" disqualification standard which the statute establishes. We did not amend the statute in *Giese.* We understand our discussion of employers' rules there as simply stating a complement to the statutory and regulatory tests: for purposes of disqualification under ORS 657.176(2)(a), an employer's rule pertaining to off-duty conduct can be reasonably related to the employer's business only under circumstances where the off-the-job conduct addressed by the rule could be considered work-connected in the absence of the rule.[1]

■     In this case, whether viewed from the perspective of the relation of the rules to employer's business or the connection of the misconduct to claimant's work, the question is whether off-the-job drug use can be disqualifying only if it does in fact or is reasonably likely in a specific case to have actual on-the-job effects. The argument for an affirmative answer is that an activity which has no impact on an employe's work is almost by definition not work-connected. Moreover, the drug test which claimant failed, and which precipitated his discharge, is incapable of determining whether the marijuana use it detects can have any on-the-job effects. It can come no closer than a 29-day range of identifying when the marijuana was pharmacologically active in any way which could bear on performance or safety.

The best argument for the opposite answer is that, to assure safety and competence in the workplace, all illegal drug use must be proscribed, because there is no way of knowing before the fact whether a particular drug episode will or will

---

[1] We note that our language in *Giese* is susceptible to another reading, which differs from both employer's and ours: Off-duty misconduct can *never* be connected with the employe's work unless the employer has a rule proscribing the misconduct. That would also be incorrect.

not have on-the-job manifestations. Employer asserts that, "[w]hile no test will measure the degree of impairment or the precise time the drug was used, [it] employed the best available test." Paradoxically, the very imprecision of the test which militates against treating the drug use it detects as disqualifying also lends support to the contrary conclusion: Because the drug can affect safety and performance for a period of time after its ingestion and there is no way of knowing when it was taken, the only guarantee that an employe will not work while he is under the effects of marijuana is if he never uses it.

Neither answer is completely satisfying, but we nevertheless must give one. We conclude that the better of the two is that claimant's misconduct was not connected with his work under these circumstances. His drug use had no *actual* impact in the workplace. The speculation that marijuana use *potentially* may have on-the-job effects which cannot be detected by the drug test does not seem to us to be a persuasive reason for regarding claimant's use of the drug as work-connected. It is a fair paraphrase of employer's position that an employe's off-the-job activity is necessarily connected with work unless there is absolute certainty that the activity *can* have *no* results which will be connected with work. The logic of that position would eviscerate ORS 657.176(2)(a) as we have interpreted it in our cases and as the Employment Division has interpreted it in the administrative rule.

If an employe is actively intoxicated or residually impaired while at work, direct observation by supervisors and co-workers would appear to be a better means of ascertaining that fact than drug testing of the kind that employer used. In any event, observation cannot be a worse means, because the urine test can show nothing about on-the-job effects. Employer's attempt to establish a work connection (and a reasonable relation of its rule to its business) is based on hypothetical possibilities, none of which has any nexus with the facts of this case. That is not enough to disqualify claimant from receiving benefits. We reject employer's first assignment of error.[2]

---

[2] Employer makes a number of points in its supporting argument which we do not address specifically. One point which does require passing mention is that employer relies on *Black v. Employment Div.*, 301 Or 221, 721 P2d 451 (1986), *cert granted* 480 US ____ (1987), and *Smith v. Employment Div.*, 301 Or 209, 721 P2d 455 (1986), *cert*

Employer makes two other assignments. Claimant represented that the urine specimen he submitted for testing was not his own, but was obtained from a friend. Employer's second assignment is that the submission of the false sample was misconduct connected with work, whether or not the drug use was. The referee and EAB concluded that that argument is immaterial, because claimant's putative submission of another person's sample was not the basis for his discharge. We agree.

Employer's final assignment is that, "[i]f existing law does not provide a rule for drug testing, the agency erred in deciding this case on an ad hoc basis without properly adopting a rule." The assignment is a puzzling one, because employer also argues that existing *case* law provides a basis for a decision favorable to itself. The point of employer's argument appears to be that, although the case law would support a decision in its favor, the cases lend no such support to claimant and, for him to prevail, there must be a rule articulating the Division's interpretation of "misconduct" in the context of off-duty drug use. The Division responds:

"The referee based his decision solely upon the existing rule which defines misconduct in terms of what an employer has 'a right to expect' of its employes or disregard of the 'employer's interests.' OAR 471-30-038(3). Having set out these standards, the Division was not required to imagine every set of circumstances in which a rule might be applied and provide a separate rule for each. This would be impossible.

"To adopt the employer's argument would be to require

---

*granted* 480 US ____ (1987), as implicitly holding that off-duty drug use is work-connected misconduct. The claimants in those cases were discharged from their employment in drug counseling programs after they ingested certain drugs in connection with religious ceremonies. The court held that the denial of unemployment benefits to the claimants would violate the First Amendment.

Employer reasons that the court necessarily decided that Black's and Smith's off-duty drug use was work-connected, because it would not otherwise have reached the constitutional question. However, even assuming employer's premise, we agree with the Division:

"Both cases are easily distinguishable from this case. *Smith* and *Black* involved drug counselors who, before they were hired, agreed not to use mind-altering drugs. The employer, a drug treatment center, hired recovered alcoholics and drug abusers whom it viewed as role models for its clients. *Smith,* 301 Or at 211; *Black,* 301 Or at 223. The use of drugs, even off-duty, destroyed the employe's value as a role model for the employer's clients."

the Division to adopt a special 'misconduct' rule every time a new social or employment problem receives attention at a hearing. So long as the Division can apply its existing rule to reach a reasoned result, no new rule is required. The rule here was adequate."

The Division is correct.[3]

Affirmed.

---

[3] Employer also contends that the concurring member of EAB based his conclusions on "policy" considerations, which would not properly be a basis for decision in the absence of a new rule. Be that as it may, *but see Philomath Forest Products Co. v. Emp. Div.*, 86 Or App 678, 741 P2d 912 (1987), the Division correctly points out that the EAB majority adopted the referee's opinion, which applied the existing administrative rule. The concurring opinion is not relevant, at least to employer's point.