Argued and submitted September 6, remanded to Employment Appeals Board for entry of orders October 18, 1988

SMITH,
*Respondent on Review,*

*v.*

EMPLOYMENT DIVISION,
*Petitioner on Review,*

*and*

ADAPT,
*Respondent.*

(84-AB-1217; CA A33421; SC S32481; USSC 86-946)

BLACK,
*Respondent on Review,*

*v.*

EMPLOYMENT DIVISION,
*Petitioner on Review,*

*and*

ADAPT,
*Respondent.*

(84-AB-161; CA A31186; SC S32482; USSC 86-947)
(Cases Consolidated for Argument)

763 P2d 146

William F. Gary, Deputy Attorney General, Salem, argued the cause for petitioner on review. On the petitions for review were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds and Jeff Bennett, Assistant Attorneys General, Salem. On the petitions for reconsideration were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Attorney General. On petitioner's supplemental briefs were Dave Frohnmayer, Attorney General, William Gary, Deputy Attorney General, and Virginia L. Linder, Solicitor General.

Suanne Lovendahl, Oregon Legal Services Corporation, Roseburg, argued the cause and filed briefs for respondents on review.

David M. Gordon, Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield, and Allen L. Johnson, Johnson & Kloos, Eugene, filed briefs *amicus curiae* on behalf of American Civil Liberties Union.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.**

PER CURIAM

** Lent, J., retired effective September 30, 1988.

## PER CURIAM

These cases are before us on remand from the Supreme Court of the United States. *Employment Div. v. Smith,* 485 US ___, 108 S Ct 1444, 99 L Ed 2d 753 (1988). We had decided that the state could not, consistent with the First Amendment, deny unemployment compensation to petitioners, who had been discharged from employment for ingesting peyote in ceremonies of the Native American Church, of which they were members. *Smith v. Employment Div.,* 301 Or 209, 721 P2d 445 (1986); *Black v. Employment Div.,* 301 Or 221, 721 P2d 451 (1986).

In our earlier opinions, we observed that the record in each case established that peyote use was a sacrament in the Native American Church, that the respondents were members of the church and sincere adherents to this faith, and that their use was in the course of a church ceremony. We also stated that it was immaterial to Oregon's unemployment compensation law whether the use of peyote violated some other law.

> "The Board found that the state's interest in proscribing the use of dangerous drugs was the compelling interest that justified denying the claimant unemployment benefits. However, the legality of ingesting peyote does not affect our analysis of the state's interest. The state's interest in denying unemployment benefits to a claimant discharged for religiously motivated misconduct must be found in the unemployment compensation statutes, not in the criminal statutes proscribing the use of peyote. The Employment Division concedes that 'the commission of an illegal act is not, in and of itself, grounds for disqualification from unemployment benefits. ORS 657.176(3) permits disqualification only if a claimant commits a felony in connection with work. * * * [T]he legality of [claimant's] ingestion of peyote has little direct bearing on this case.'

> "The state's interest is simply the financial interest in the payment of benefits from the unemployment insurance fund to this claimant and other claimants similarly situated." (Footnote omitted.)

*Smith v. Employment Div., supra,* 301 Or at 218-19. The decisions of the United States Supreme Court on which we relied held that this financial interest did not suffice to override interests of unemployment compensation claimants in the

free exercise of their religion. *Thomas v. Review Board,* 450 US 707, 101 S Ct 1425, 67 L Ed 2d 624 (1981); *Sherbert v. Verner,* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963).

On certiorari, the United States Supreme Court remanded the decisions to this court for clarification of the legality of petitioners' use of peyote. *Employment Div. v. Smith, supra.* Alluding to *Reynolds v. United States,* 98 US 145, 25 L Ed 244 (1878), a decision in which criminal proscription of bigamy was upheld against a Free Exercise challenge, the Court declared:

> "If a bigamist may be sent to jail despite the religious motivation for his misconduct, surely a State may refuse to pay unemployment compensation to a marriage counselor who was discharged because he or she entered into a bigamous relationship. The protection that the First Amendment provides to *'legitimate* claims to the free exercise of religion,' does not extend to conduct that a State has validly proscribed." (Emphasis in original.)

485 US at ____, 108 S Ct at 1451, 99 L Ed 2d at 764. In sum, the Supreme Court held that a state's criminal law is relevant in that if a state has validly criminalized certain types of religiously motivated conduct, it may also deny unemployment benefits to persons discharged for engaging in that conduct. 485 US at ____, 108 S Ct at 1450, 99 L Ed 2d at 763. The Court noted that it was uncertain whether Oregon law proscribed the peyote use in question here and, if so, whether the law could constitutionally be applied to petitioners.[1] We conclude that the Oregon statute against possession of controlled

---

[1] The Court wrote:

"The possibility that respondents' conduct would be unprotected if it violated the State's criminal code is, however, sufficient to counsel against affirming the State's holding that the Federal Constitution requires the award of benefits to these respondents. If the Oregon Supreme Court's holding rests on the unstated premise that respondents' conduct is entitled to the same measure of federal constitutional protection regardless of its criminality, that holding is erroneous. If, on the other hand, it rests on the unstated premise that the conduct is not unlawful in Oregon, the explanation of that premise would make it more difficult to distinguish our holdings in Sherbert, Thomas, and Hobbie."

485 US at ____, 108 S Ct at 1452, 99 L Ed 2d at 766.

substances, which include peyote,[2] makes no exception for the sacramental use of peyote, but that outright prohibition of good faith religious use of peyote by adult members of the Native American Church would violate the First Amendment directly and as interpreted by Congress. We therefore reaffirm our holding that the First Amendment entitles petitioners to unemployment compensation.[3]

The long history of peyote as the sacred object of the Native American Church, entitling members to a First Amendment exemption from its prohibition, was reviewed by Justice Tobriner 24 years ago in *People v. Woody,* 61 Cal 2d 716, 40 Cal Rptr 69, 394 P2d 813 (1964), quoted extensively in our earlier opinion in *Black v. Employment Div., supra,* 301 Or at 225-227. The court concluded that peyote "plays a central role in the ceremony and practice of the Native American Church" and that its religious use was known in the 16th century. "Although peyote serves as a sacramental symbol similar to bread and wine in certain Christian churches, it is more than a sacrament. Peyote constitutes in itself an object of worship; prayers are devoted to the Holy Ghost. On the

---

[2] ORS 475.992(4)(a) prohibits possession of controlled substances listed on a schedule adopted by the State Board of Pharmacy. Peyote is listed on the schedule. OAR 855-80-021(3)(s). Neither the statute nor the regulation make an exception for religious use of peyote, nor do they by reference adopt the exemption found in federal law, *see* 21 CFR § 1307.31 (1987).

At least 11 states expressly exempt sacramental peyote use from criminal prosecution. *See* Ariz Rev Stat Ann § 13-3402(B) (West Supp 1987); Colo Rev Stat § 12-22-317(3) (1985); Iowa Code Ann § 204.204.8 (West 1987); Kan Stat Ann § 65-4116(c)(8) (1985); Minn Stat Ann § 152-02 Subd 2(4) (West Supp 1988); Nev Rev Stat § 453.541 (1987); NM Stat Ann § 30-31-6(D) (Supp 1988); SD Codified Laws Ann § 34-20B-14(17) (1986); Tex Stat Ann 4476-15 § 4.11 (West 1976); Wisc Stat § 161.115 (1975); Wyo Stat 35-7-1044 (1988).

In addition, at least 12 other states link their exemptions to those under federal law. *See* Alaska Stat § 11.71.195 (1983); Miss Code Ann § 41-29-111(d) (1981); Mont Code Ann § 50-32-203 (1987); NJ Stat Ann § 24:21-3(c) (West Supp 1988); NC Gen Stat § 90-88(d) (1985); ND Cent Code § 19-03.1-02.4 (1981); RI Gen Laws § 21-28-2.01(c) (1982); Tenn Code Ann § 39-6-403(d) (1982); Utah Code Ann § 58-37-3(3) (1986); Va Code Ann § 54-524.84:1(d) (1982); Wash Rev Code § 69-50.201(d); W Va Code 60A-2-202(d) (1984).

[3] If disqualification from unemployment compensation hinged on guilt or innocence of an uncharged and untried crime, it would raise issues of the applicable mental state and of changing burdens of proof for which the compensation procedure is neither designed nor equipped. Because no criminal case is before us, we do not give an advisory opinion on the circumstances under which prosecuting members of the Native American Church under ORS 475.992(4)(a) for sacramental use of peyote would violate the Oregon Constitution.

other hand, to use peyote for nonreligious purposes is sacrilegious." 61 Cal 2d at 721, 40 Cal Rptr at 73, 394 P2d at 817. To prohibit the use of peyote "results in a virtual inhibition of the practice of defendants' religion." *Id.* at 722. The experience of states that exempted bona fide religious use of peyote from the prohibition did not support any compelling state interest in suppressing it. *Id.* at 722. The court therefore decided that this religious use was privileged under the First Amendment. *See also In re Grady,* 61 Cal 2d 887, 39 Cal Rptr 912, 394 P2d 728 (1964).

Subsequent state and federal decisions have divided on protecting the religious use of peyote under the First Amendment. *See* Brown, *Religion: The Psychedelic Perspective: The Freedom of Religion Defense,* 11 Am Indian L Rev 125 (1983).[4] We do not now reexamine the background recited in *People v. Woody, supra,* nor the question on what kind of record such a claim should be examined in the future. The view of the Native American Church and its constitutionally privileged use of peyote that was expressed by the California Supreme Court in *Woody* was expressly endorsed by Congress.

In 1965, when Congress first brought peyote within the Drug Abuse Control Amendments of 1965, 79 Stat 226 § 3(a), Congress made clear that it expected the implementing regulations to exempt the religious use of peyote. Representative Harris expressly referred to the holding in *Woody* "that prosecutions for the use of peyote in connection with religious ceremonies was a violation of the first amendment to the Constitution," and he gave the House the assurances of the Food and Drug Administration that the bill "cannot forbid bona fide religious use of peyote." 111 Cong Rec 15977 (1965). *See Native American Church of New York v. United States,*

---

[4] In two recent decisions not related to peyote, the Supreme Court rejected American Indian religious claims not to be assigned social security numbers, *Bowen v. Roy,* 476 US 693, 106 S Ct 2147, 90 L Ed 2d 735 (1986), and to preserve a religiously important area in a national forest from roadbuilding, *Lyng v. N.W. Indian Cemetery Prot. Asso.,* ____ US ____, 108 S Ct 1492, 99 L Ed 534 (1988). The Court stressed that these cases involved management of government functions rather than prohibitory regulations. Without addressing whether we would make this distinction between regulatory and managerial functions in a case under Oregon law, *see* Linde, *Constitutional Rights in the Public Sector: Justice Douglas on Liberty in the Welfare State,* 40 Wash L Rev 10 (1965), we note that ORS 475.992(4)(a), of course, is a prohibitory law.

468 F Supp 1247, 1249-50. Congressional approval of exempting the bona fide religious use of peyote in the Native American Church was reiterated in 1970. *See Peyote Way Church of God, Inc. v. Smith,* 742 F2d 193, 197 at n 15 (1984).

Even more emphatically, in 1978, Congress by law made it "the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." 42 USC 1996 (1982). The accompanying report of the House Committee on Interior and Insular Affairs stated, with respect to federal restriction of the use of peyote and other substances in Indian religions:

"To the Indians, these natural objects have religious significance because they are sacred, they have power, they heal, they are necessary to the exercise of rites of the religion, they are necessary to the cultural integrity of the tribe and, therefore, religious survival or a combination of these reasons. To the Federal Government, these substances are restricted because the non-Indian has made them scarce, as in endangered species, or because they pose a health threat to those who misuse them, as in peyote.

"The Federal court system has shown that this apparent conflict can be overcome with the institution of well thought out exceptions. Although acts of Congress prohibit the use of peyote as a hallucinogen, it is established Federal law that peyote is constitutionally protected when used by a bona fide religion as a sacrament."

H. Rep. No. 1308, 95th Cong, 2d Sess 2 (1978). Congress, of course, has the power under section 5 of the Fourteenth Amendment to protect against state infringement what it believes to be the free exercise of religion under the First Amendment. While Congress has not done so expressly, it has unmistakably adopted the view that the use of peyote in the Native American Church is the kind of free exercise of religion that the First Amendment protects. In light of this repeated recognition of that church's use of peyote, we are convinced that the First Amendment would not allow Oregon authorities to seize peyote used in good faith in a religious ceremony of the

Native American Church and to prosecute those who possess it.

In our first decision, we concluded that the decisions against denying unemployment compensation to persons whose unemployment results from their exercise of their religious freedom precluded a denial of unemployment compensation in these cases. Because, for the reasons set forth above, we hold on remand that the First Amendment prevents enforcement of prohibitions against possession or use of peyote for religious purposes in the Native American Church, we reaffirm that conclusion.

The case is remanded to the Board for entry of orders consistent with this court's decisions of June 24, 1986, *Smith v. Employment Div.*, 301 Or 209, 721 P2d 445 (1986), and *Black v. Employment Div.*, 301 Or 221, 721 P2d 451 (1986).