Argued and submitted October 7, 1988, reversed and remanded for reconsideration
March 22, 1989

PORTLAND GENERAL ELECTRIC COMPANY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-192, 88-AB-192-A; CA A47722)

770 P2d 940

Mary Ellen Hoffman, Portland, argued the cause and filed the brief for petitioner.

No appearance for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Employer seeks review of an order of the Employment Appeals Board allowing benefits and reversing the referee's determination that claimant was discharged for misconduct. Because we conclude that EAB's conclusions are not rationally related to its findings of fact, we reverse and remand.

Claimant worked as a lineman for employer from July 21, 1978, to September 29, 1987. That job required him to climb power poles, perform electrical repairs and deal with low and high voltage power lines. On January 8, 1987, employer suspended claimant, alleging that he had been intoxicated on the job and giving him the choice of entering an alcohol treatment program or being terminated. He submitted to treatment and, as a further condition of retaining his job, signed a return-to-work agreement on February 12, 1987. It stated, in part:

"5. I agree to meet all established standards of conduct in job performance and that I will be subject to the Company's disciplinary procedures for failure to meet work performance standards.

"6. I agree to consent to a blood alcohol or breathalizer test if my appearance or performance on the job gives reason to doubt continued sobriety. A positive test will result in my immediate termination.

"7. I agree to urine drug testing during the next 12 months on a random basis (no more than three times during one year). A positive test will result in my immediate termination.

"8. I understand that violation of this return-to-work agreement will result in the termination of my employment with Portland General Electric."

On September 24, 1987, a co-worker told claimant's supervisor that he had seen him stop at a liquor store just before reporting to work. The supervisor later observed claimant perspiring and shaking. About three hours into the work shift, the supervisor ordered him to take a random urine test, which showed that he had a .138 blood alcohol content. As a result, employer terminated him.

Under ORS 657.176(2)(a), an individual is disqualified from receiving unemployment insurance benefits if the person "[h]as been discharged for misconduct connected with work." OAR 471-30-038(3) defines misconduct as

"a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest * * * is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for the purposes of denying benefits under ORS 657.176."

A claimant's benefits may be denied if the conduct for which he was discharged was work-connected, wilful and not specifically excluded from the definition of misconduct by the rule.

The referee found that claimant was disqualified from receiving benefits, because he had been discharged for misconduct. EAB reversed that decision, however, and reinstated his benefits. Its conclusion and reasons were, in pertinent part:

"All we know from this record is that claimant had a blood alcohol content of .138 around 3:00 p.m. on September 24, 1987. We do not know when claimant drank the alcohol. We do not know that claimant was intoxicated when he reported to work. There is no evidence that claimant was impaired, merely a conclusory statement that the employer determined claimant was unfit to work. Concluding that shaky hands and perspiration do not make a person unfit for work, we note only that there is no other objective evidence in the record upon which we could reach a conclusion that claimant was impaired.

"The record is absent any evidence upon which we can make a finding or reach a conclusion that claimant's conduct was wilful. The employer has failed in this regard to meet its burden of proof.

"Although the employer may have been justified in terminating claimant (pursuant to the terms of the return-to-work agreement) the record provides no basis for a finding of misconduct or a disqualification from benefits."

We review to determine whether EAB's order is supported by substantial evidence and whether there is a rational relationship between its findings of fact and the inferences and

conclusions that it draws. *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981); *Bremer v. Employment Division,* 47 Or App 1131, 1136, 615 P2d 1170 (1980).

██  Neither of EAB's conclusions in this case is consistent with its factual findings. First, in concluding that the evidence was insufficient to establish an on-the-job impairment, it apparently reasoned that, because claimant's drinking may have occurred off-duty, employer may establish work-relatedness only by proving that his on-the-job performance was inadequate. That view is mistaken. Off-the-job drug use can be disqualifying "if it does in fact *or is reasonably likely in a specific case to have* actual on-the-job effects." *Glide Lumber Prod. Co. v. Emp. Div.,* 86 Or App 669, 675, 741 P2d 907 (1987).[1] (Emphasis supplied.)

In this case, employer knew that claimant had registered a .138 blood alcohol content three hours into his work shift and had manifested other physical symptoms of intoxication. Given those circumstances, it justifiably concluded that claimant was too intoxicated to climb power poles and repair high voltage power lines without endangering himself or others. There is no rational basis for EAB's conclusion to the contrary.

█  The conclusion that claimant's conduct was not demonstrated to be wilful is also inconsistent with its findings. EAB made these findings:

"(5)  On January 8, 1987, the claimant was observed behaving erratically and was placed on suspension due to alleged intoxication on the job.

---

[1] In *Glide,* the employer discharged the employe after he tested positive for marijuana in a random drug test. We held that, because all that the test determined was that the employe had used marijuana at some point during the past 29 days, it did not prove that he was impaired on the job. Thus, without evidence of actual impact in the workplace, his off-duty drug use could not be deemed work-connected. Unlike the drug test used in *Glide,* however, the legislature has decided that chemical analysis of a person's blood or urine provides a reasonably accurate measure of the level of intoxication present at or near the time of the test. *See* ORS 813.010; ORS 813.140; ORS 813.300. Moreover, *Glide* does not imply that on-the-job intoxication which results from off-the-job ingestion is not work-connected. We expressly cast the issue in that case as being whether the claimant's off-duty drug use was disqualifying "when there [was] no evidence of on-the-job *intoxication or* impairment." 86 Or App at 671. (Emphasis supplied.) Therefore, employer here could consider the results of the claimant's urine test as evidence of on-the-job impairment.

"'* * * * *

"(9) Pursuant to [a return-to-work agreement] claimant consented to random alcohol and drug testing. A positive test result would be grounds for immediate termination."

Those facts establish that claimant was aware of employer's expectation that he stay sober at work. He nevertheless failed to do so. EAB did *not* find that claimant was an alcoholic or that he was unable to control his drinking.[2] Based on EAB's findings, the conclusion is inescapable that his disregard of employer's interests was deliberate.

Finally, EAB did not conclude that claimant's conduct constituted an isolated instance of poor judgment, good faith error, absence due to illness or inefficiency resulting from lack of job skills or experience. Because it lacked a factual basis for concluding that claimant's misconduct was not work-connected or wilful, EAB's order must be reversed.

Reversed and remanded for reconsideration.

---

[2] If an employe is an alcoholic and, as a result, has no control over his drinking, his misconduct may not be "wilful" under OAR 471-30-038(3). *Christensen v. Employment Division,* 66 Or App 309, 673 P2d 1379 (1984). However, whether a person's conduct is wilful or is caused by alcoholism is a question of fact. *James River Corp. v. Employment Division,* 94 Or App 268, 765 P2d 217 (1988). EAB neither found that respondent was an alcoholic nor concluded that his conduct was the result of alcoholism.