Argued and submitted February 23, 1990, affirmed January 23, reconsideration denied
May 8, petition for review denied June 20, 1991 (311 Or 433)

# WEYERHAEUSER COMPANY,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION
## and Michael D. Schilpp,
*Respondents.*

(89-AB-299; CA A60233)

804 P2d 1183

Mark M. Loomis, Portland, argued the cause for petitioner. With him on the brief were Scott T. Cliff and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Meg Reeves, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert L. Burns, Gresham, argued the cause and filed the brief for respondent Michael D. Schilpp.

Before Joseph, Chief Judge, and Richardson and Edmonds, Judges.

RICHARDSON, J.

Joseph, C. J., concurring.

## RICHARDSON, J.

The Employment Appeals Board held that claimant's discharge was not for "misconduct connected with work," ORS 657.176(2)(a); OAR 471-30-038(3), and that he is not disqualified from receiving unemployment benefits. Employer seeks review, and we affirm.

Claimant began to work for employer in 1974. In 1987, he participated in a substance abuse treatment program provided by employer and entered into a "last chance" return to work contract with employer. Although the agreement does not say so expressly, its purpose was to prevent any controlled substance use by claimant, on the job or off, and to provide for the termination of his employment if he were to violate that condition. *See* note 2, *infra.* In 1988, claimant was absent or tardy on a number of occasions. His supervisor apparently linked the attendance problem to possible drug use, although claimant had shown no signs of on-the-job intoxication or impairment and there had been no on-the-job use. At employer's request, claimant submitted to a drug test, which was positive for amphetamines and methamphetamines, and he was fired.

EAB concluded that claimant's off-duty drug use was not misconduct connected with his work. We quote at some length from its opinion, and note that employer does not assign error to any factual determinations:

> "The employer's witnesses indicated that the claimant was discharged because of the drug test results and also because of his attendance. Neither singularly, nor together do these reasons constitute misconduct as defined by [OAR 471-30-038(3)].

> "The claimant failed to pass a drug test. This created a concern for the employer. However, the guideline for determining if misconduct exists in such cases was set out in the matter of Lyle E. Zufelt, Jr., Referee Decision Case Number 87-S-1587-E, issued April 2, 1987. In that case, the Assistant Director for the Employment Division set out that an individual would be considered discharged for misconduct for failing a drug test only if there was clear objective evidence that the employe was drug impaired. That was not the situation in this case. The claimant was not shown to be impaired or in any way deficient in performing his job duties. To the contrary, the employer

witnesses only had good things to say about his job performance. The only problem listed was an attendance and tardiness problem.

"The claimant adequately explained those problems. He was ill on those occasions that he was absent. He did call the employer. The tardies occurred due to problems with the alarm or illness. Such situations do not constitute misconduct.

"The employer made the determination that the claimant was no longer a suitable employe. That was a determination that [it was] free to make. However, the evidence does not establish that grounds exist which would support disqualifying the claimant from the receipt of unemployment insurance benefits as a result of his separation from the employ of the above employer on November 14, 1988."[1]

Employer contends, first, that *Lyle E. Zufelt, Jr.,* Opinion and Order No. 87-S-1587-E (1987), is an "improperly promulgated" decision, and that EAB therefore erred by applying and following it. In *Zufelt,* the assistant director for the Employment Division, sitting as a referee in a contested case, articulated "policies * * * pursuant to *Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985), to insure consistent application of law to situations involving drug testing and related issues." *Zufelt* says, as material:

"[B]efore benefits are denied for failing a drug test it should be shown that: (1) proper testing and confirmation procedures have been followed; and (2) there is clear objective evidence of impairment (e.g., bizarre behavior, substantial loss of productivity, etc.).

"DISCHARGE. If an employe is discharged for failing a drug test and there is clear objective evidence that the employe was drug impaired, it is a discharge for misconduct."

In *Trebesch v. Employment Division, supra,* the court concluded that the assistant director has authority to interpret and establish standards for applying statutory terms through orders in contested cases as well as through rulemaking. Employer argues, however, that ORS 657.290 authorizes the assistant director to act only on applications for reconsideration in contested cases and that he exceeded that

_____

[1] Employer makes no assignment challenging EAB's conclusion that the attendance lapses, in themselves, were not work-connected misconduct.

authority in *Zufelt,* where he acted as a referee. We agree with the Division that we cannot reach the merits of that argument. *Zufelt* was a contested case, to which employer was not a party, and the time for seeking review of it has long since passed. Even assuming that *Zufelt* could be challenged as an administrative rule, notwithstanding the finality of the contested case decision, employer would not be aided. ORS 183.400(6) provides:

> "The court shall not declare a rule invalid solely because it was adopted without compliance with applicable rulemaking procedures after a period of two years after the date the rule was filed in the office of the Secretary of State, if the agency attempted to comply with those procedures and its failure to do so did not substantially prejudice the interests of the parties."

Employer's contention that an official with the authority to act was wearing the wrong hat when he acted raises, at best, a question of compliance with applicable procedures. Employer does not demonstrate that prejudice to its interests resulted from any noncompliance. Neither the substance of the policies nor their dissemination and availability were affected by the fact that the assistant director decided *Zufelt* as a referee rather than on reconsideration of a referee's decision. *See Redman Homes, Inc. v. Employment Div.,* 97 Or App 653, 777 P2d 414 (1989).

■     Employer argues next that the assistant director was required to adopt the policies through rulemaking rather than in a contested case order. As discussed above, in *Trebesch v. Employment Division, supra,* the court concluded that the assistant director may use either rules or orders in contested cases as the vehicle for explicating statutory terms. Employer argues that that option should exist only when, as in *Trebesch,* the term is "interpretive" and that rulemaking is required when, as employer considers to be the case here, the term or the circumstances entail "policymaking."

That argument is answered adversely by *Redman Homes, Inc. v. Employment Div., supra,* where the issue was whether an employee who quit rather than take a drug test had "good cause" for doing so under ORS 657.176(2)(c). We applied *Zufelt* and described it as the Division's articulation of

policy "[w]ith respect to situations involving drug testing." 97 Or App at 656. We also said, citing *Trebesch:*

"The Division may interpret the term 'good cause' either by rulemaking or by issuing an order in a contested case." 97 Or App at 656.

"Good cause," like "misconduct connected with work," is a delegative term that calls for the agency's completion of a general legislative policy decision. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 228, 621 P2d 547 (1980); *Sun Veneer v. Employment Div.,* 105 Or App 198, 804 P2d 1174 (1991). The assistant director acted within his authority by using the contested case order in *Zufelt* to establish policies for the application of both statutory terms to drug-related claims.

■ In its next assignment, employer argues that, even if *Zufelt* was "properly promulgated," EAB erred by applying it here. Employer explains that, rather than being based on the off-duty drug use that the test revealed and to which *Zufelt* does apply, claimant's discharge resulted from his violation of a requirement in the return to work contract that he remain "drug free." The premise of the argument is that the violation of the "last chance" agreement can be disqualifying in itself, even if the conduct otherwise would not be disqualifying under the statute and regulatory provisions. We rejected an argument that shared that premise in *Sun Veneer v. Employment Div., supra. See also Glide Lumber Prod. Co. v. Emp. Div. (Smith),* 86 Or App 669, 674, 741 P2d 907 (1987).[2]

Employer next argues:

"[C]laimant was tested for drugs precisely because he was *not* on the job when he should have been and his supervisor suspected that his attendance problems were linked to substance abuse, in violation of his return to work contract. Because he did not report to work when he should have, claimant could not be shown to be impaired or under the influence of intoxicants at work; and such impairment would have been irrelevant to employer's attendance concerns. *Zufelt* is, therefore, factually inapplicable." (Emphasis employer's.)

---

[2] As noted in the text, the agreement has the clear objective of prohibiting any drug use, but does not *state* that requirement expressly. Because *Sun Veneer* adversely answers the argument that employer makes, no purpose would be served by construing the agreement to determine whether it suffices as a predicate for that argument.

The problem with that argument, aside from being speculative,[3] is that EAB found that claimant's absences were adequately explained by reasons other than drug use. Moreover, we are unable to agree with employer that *Zufelt* is rendered "factually inapplicable" simply because no occasion arose on which claimant could be denied benefits under it.

Employer makes frequent reference in its brief to the perils of employee drug use, to the generous aid that it provides employees in overcoming drug problems and to claimant's ingratitude and incorrigibility. If there were or could be any question before us about the propriety of claimant's *discharge,* we would have little difficulty in agreeing with those points. The question, however, is whether claimant is disqualified from *unemployment benefits* because of misconduct connected with his work. EAB correctly answered that question.

Affirmed.

**JOSEPH, C. J.,** concurring.

Having joined in the dissenting opinion in *Sun Veneer v. Employment Div.,* 105 Or App 198, 804 P2d 1174 (1991), I choose not to reiterate that view here and, instead, concur in the result in this case. Edmonds, J., the author of the dissent in *Sun Veneer,* joins me in concurring, although presumably with less good grace than I.

---

[3] Claimant was not intoxicated or physically impaired when he took and failed the test.